THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LONGHORN HD LLC, | § § | |
| Plaintiff, | § § | C.A. No. 2:19-cv-00384-JRG |
| v. | § § | JURY TRIAL DEMANDED |
| CHECK POINT SOFTWARE TECHNOLOGIES, LTD., | § § § § | |
| Defendant. | § | |

**CHECK POINT SOFTWARE TECHNOLOGIES, LTD.'S MOTION TO DISMISS**

**I.   INTRODUCTION**

Plaintiff Longhorn HD LLC ("Longhorn") is asserting five patents against Check Point Software Technologies, Ltd. ("Check Point"). The Complaint purports to state claims for direct infringement of all five patents, and for induced infringement of three of the patents. Check Point moves to dismiss the indirect infringement claims because the Complaint does not set forth a valid basis upon which relief can be granted.

Even accepting all of its allegations as true, the Complaint's claims for indirect infringement fall far short of the pleading requirement set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Each of these claims purports to allege induced infringement under 35 U.S.C. § 271(b). In each case, however, the Complaint merely recites the legal elements of inducement without ***any*** factual support. Among other things, Plaintiff has not pled facts plausibly showing that Check Point had knowledge of the patents or infringement thereof, does

not identify any act Check Point allegedly took to cause infringement (much less that Check Point took an action with the specific intent to cause infringement), and does not plead facts that might support a claim that Check Point was willfully blind to infringement. The Court should, therefore, dismiss Counts III-V of the Complaint.

## II.     ISSUES TO BE DECIDED

1. Whether the indirect patent infringement claims in Counts III-V of the Complaint fail to state a claim upon which relief may be granted.

## III.    BACKGROUND

Longhorn's Complaint states that it owns the five patents asserted in this case. Dkt. No. 1 ¶ 12. The asserted patents are U.S Patent Nos. 6,421,732 ("'732 patent"), 6,643,778 ("'778 patent"), 6,954,790 ("'790 patent"), 7,260,846 ("'846 patent"), and 7,343,421 ("'421 patent"). *Id*. ¶¶ 7-11. These patents purportedly all cover "systems and methods for computer and network security." *Id*. ¶ 13.

Check Point is a leading provider of network security products and services – its products protect a majority of the Fortune 500 as well as many of the national security agencies of the United States and its allies. Plaintiff alleges that Check Point infringes the asserted patents by "making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products that include security gateways, routers, control system security appliance, clouds, and components and software that provide firewall, VPN, IPSec, DNS, IDS/IPS, and selective network address-based communication, mobile security, and threat protection functionality that infringes the Patents-in-Suit ("Accused Products") including, but not limited to, Check Point Next Generation Firewalls ("NGFWs"), Security Gateway devices, and Network Threat Prevention devices and services, including, for

example, Series Services Gateways including, for example [sic]." *Id.* ¶ 19; *see also id.* ¶¶ 22, 30, 39, 50, 62. In Counts III-V,[1] Plaintiff alleges that Check Point's infringement includes inducing direct infringement. *Id.* ¶¶ 43-45, 55-57, 64-66. Plaintiff alleges, without further detail, that Check Point induces infringement "by knowingly and intentionally inducing others, including Check Point customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology . . . ." *Id.* ¶¶ 43, 55, 64.[2] Plaintiff further alleges that Check Point, "with knowledge that these products, or the use thereof, infringe the ['790]['846]['421] Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the ['790]['846]['421] Patent by providing these products to end users for use in an infringing manner." *Id.* ¶¶ 44, 56, 65. Finally, Plaintiff alleges that Check Point "induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the ['790]['846]['421] Patent, but while remaining willfully blind to the infringement." *Id.* ¶¶ 45, 57, 66.

In Counts III-V, Plaintiff alleges that Check Point had actual notice of its infringement and has been inducing infringement "at least as of the date of this Complaint." *Id.* ¶¶ 44-45, 56-57, 65-66. The Complaint does not allege that Plaintiff ever provided Check Point pre-suit notice of Longhorn's patents or its infringement allegations.

---

[1] Counts III-V allege infringement (direct and indirect) of the '790 '846, and '421 patents, respectively.
[2] Count V also includes the additional allegation that Check Point "direct[s] their customers to utilize the Accused Products in an infringing matter through marketing and support materials." *Id.* ¶ 64.

## IV.     ARGUMENT

### 1.  LEGAL STANDARD

#### a.  Twombly And Iqbal Require Factual Allegations, Not Just Conclusory Assertions.

A Court should dismiss a claim challenged under FRCP 12(b)(6) when the claim does not contain enough alleged *facts* to state a "plausible" claim for relief.  *Twombly*, 550 U.S. at 570.  The "*Iqbal/Twombly* standard unquestionably applies to . . . allegations of induced and contributory infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc*., 869 F.3d 1372, 1379 (Fed. Cir. 2017).

#### b.  Plaintiff Must Plead <u>Facts</u> Showing Both Knowledge and Specific Intent

Induced infringement under § 271(b) requires both knowledge and specific intent.  *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (*quoting Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011))*.* As a result, "[f]or an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement." *Lifetime Indus*., 869 F.3d at 1379 (quotation and citation omitted).

### 2.  PLAINTIFF FAILED TO ADEQUATELY PLEAD INDUCED INFRINGEMENT

Plaintiff has not alleged facts that could support a plausible claim for induced infringement.  Indeed, as shown below, Plaintiff has not plead facts sufficient to support *any* of the required elements for a claim of induced infringement.

### a. Plaintiff Fails to Allege the Requisite Knowledge

#### i. Plaintiff Fails to Allege Knowledge of The Asserted Patents

Despite asserting inducement for *pre-suit* conduct, Plaintiff alleges only that Check Point has knowledge of the patents based on the filing of the Complaint. *See* Dkt No. 1 ¶¶ 44, 56, 65 (alleging infringement "at least as of the date of this Complaint").  But Check Point cannot be liable for *past* inducement, occurring before the filing of the Complaint, based on an allegation that it learned of the asserted patents as a result of Plaintiff filing the Complaint.  The Court should therefore (at a minimum) limit Plaintiff's claims to allegations of induced infringement post-dating the filing of the Complaint.

The Court should also dismiss the claims of *post-filing* inducement.  In making this argument we acknowledge that this Court has previously permitted plaintiffs to pursue post-filing inducement claims based on knowledge conferred by the complaint.[3]  Those decisions are, respectfully, in error. The Federal Circuit has specifically rejected this type of claim as improper bootstrapping in the context of claims for willful infringement.  *See In re Seagate Tech., LCC*, 497 F.3d 1369, 1374 (Fed. Cir. 2007) ("[W]hen a complaint is filed, a patentee must have a good faith basis" for its allegations. Claims asserted in the original complaint "must necessarily be grounded exclusively in the accused infringer's pre-filing conduct.") *abrogated on other grounds*

---

[3] *See, e.g.*, *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 937 (E.D. Tex. 2016) ("[A] complaint provides sufficient notice of the existence of the patent-in-suit to support a claim of indirect infringement as to conduct following the filing of the initial complaint in the case."); *Achates Reference Pub., Inc. v. Symantec Corp.*, No. 2:11–CV–294, 2013 WL 693955, at *2 (E.D. Tex. Jan. 10, 2013) ("Because the Complaint alleges that the infringement is ongoing, it is plausible that some induced infringement has occurred during the pendency of this case.").

*by Halo Elecs., Inv. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).[4] Indeed, this Court has itself adopted the *Seagate* reasoning, explaining that, "[w]hen filing its complaint, [Plaintiff is] required to have a good faith basis for alleging willful and induced infringement." *Bush Seismic Techs. LLC v. Am. Gem Soc'y*, No. 2:14-CV-1809-JRG, 2016 WL 9115381, at *3 (E.D. Tex. Apr. 13, 2016). And, Plaintiff "could not have had a good faith basis to allege willful and induced infringement" when its allegations are exclusively "based on post-suit conduct that ha[s] not yet occurred." *Id.*; *see also* Fed. R. Civ. P. 11(b)(3) (requiring factual contentions in pleadings to the court to have evidentiary support); *VLSI Tech. LLC v. Intel Corp.*, No. CV 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) ("The complaint itself cannot serve as the basis for a defendant's actionable knowledge. The purpose of a complaint is not to create a claim but rather to obtain relief for an existing claim."). The proper course for a patentee is "not to prospectively allege post-filing conduct in an original complaint" but, "[r]ather, if claims for willful or induced infringement arise after the lawsuit is filed, the patentee should amend its complaint to include such claims." *Bush*, 2016 WL 9115381, at *3. As in *Bush*, Plaintiff's induced infringement claims here are grounded exclusively in Check Point's post-filing conduct. Accordingly, these claims should be dismissed.[5]

### ii. Plaintiff Fails to Allege Knowledge of Infringement

Even assuming Plaintiff adequately alleges knowledge of the patents (it does not), inducement requires "proof the defendant ***knew the acts were infringing***." *Commil*, 135 S. Ct. at

---

[4] *Seagate* arose in the context of willfulness, but there is no principled reason to treat the law for pleading knowledge for willfulness any differently from pleading knowledge for indirect infringement.

[5] As discussed below, the mere allegation that Check Point was "willfully blind" to the alleged infringement cannot substitute for knowledge of the patents in this case.

6

1928 (emphasis added).  Because this is an essential element of a claim for induced infringement, it applies at the pleading stage.  *Lifetime Indus.*, 869 F.3d at 1379.

Here, Plaintiff has pled only the conclusion that Check Point had knowledge of the patents and "knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement" of the '790, '846, and '421 patents. Dkt. No. 1, ¶¶ 44, 56, 65. The Complaint pleads *no* facts which might tend to show that Check Point knew of any act of direct infringement by a third party—nor are there any facts alleged that might render that assertion plausible. Nor does Plaintiff allege that it provided Check Point pre-suit notice.[6] Instead, the allegations boil down to an (impermissible) recitation of the bare legal conclusion and the Court should, therefore, dismiss them.

The Court might also ask "why bother"—i.e., what is the point of taking up judicial resources with a motion to dismiss if the plaintiff can simply amend the complaint to plead knowledge since the time of the original complaint. While the Plaintiff may be able to fix the knowledge allegation by amendment, such an amendment would not be without consequences. Indeed, as discussed further below, in order to plead a claim for inducement, a plaintiff must point to acts (including statements) made after the defendant obtained knowledge of its supposed infringement. As a result, in an amended complaint, Plaintiff will need (if it is to properly state a claim) to identify specific acts or statements Check Point has taken or made since the original complaint that show a specific intent to induce infringement. This, we believe, it cannot do.

---

[6]Actual notice of infringement under 35 U.S.C. § 287(a) requires an "affirmative communication to the alleged infringer of a specific charge of infringement by a specific accused product or device." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001) (modification and citation omitted)).

7

### b. Plaintiff Fails to Allege Affirmative Conduct That Encourages Infringement.

Section 271(b) creates liability for one who "actively induces infringement," which indicates "that the inducement must involve the taking of affirmative steps to bring about the desired result." *Global-Tech*, 563 U.S. at 760. Plaintiff, however, does not identify any steps taken by Check Point to bring about the specific result of infringement.

The *only* alleged step Check Point has taken is continuing to sell its products.[7] While this Court has found that continued sales constitute a sufficient affirmative act for inducement in some circumstances, it should not do so here. Indirect infringement is aimed at holding accountable parties who cause or encourage infringement by someone else. As such, there must be a suggestion by the alleged inducer to use the product in an infringing way. *See Global-Tech*, 563 U.S. at 760 ("The addition of the adverb 'actively' [in section 271(b)] suggests that the inducement must involve the taking of affirmative steps to bring about the desired result.") & 763 (The affirmative steps requirement establishes a defendant's "purposeful, culpable expression and conduct."); *see also Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.,* No. 2:13-CV-38-JRG, 2014 WL 894805, at *4 (E.D. Tex. Mar. 4, 2014) ("Such evidence ordinarily consists of *knowledge* that the accused product may be and is used to infringe the patent-in-suit *plus* some other factor indicating the defendant's desire to attract users of a mind to infringe.") (quotation marks omitted). Here, all Check Point is accused of is continuing its business as usual. But "failure to change behavior in light of a new fact cannot be characterized

---

[7] As a preliminary matter, this argument suffers the same flaw as Plaintiff's knowledge allegations addressed above. At the time Plaintiff filed the Complaint, Check Point had not "continued" selling its products. That is, Check Point cannot *continue* selling an allegedly infringing product post-complaint that it did not even have reason to believe was infringing pre-Complaint. Plaintiff's claims cannot rest on allegations of what will happen in the future, *see* Fed. R. Civ. P. 11(b)(3), rather than conduct that has actually occurred.

as an affirmative step evincing desire on the part of [Check Point] that users infringe [Plaintiff's] patents." *Tierra*, 2014 WL 894805, at *6.

This is especially the case where, as here, the alleged infringing product is capable of numerous non-infringing uses.[8] In fact, because Check Point's products have substantial non-infringing uses, Check Point is *entitled* to continue selling its products, and such continued sales cannot constitute an affirmative step to induce infringement. *Id.* A contrary rule would vitiate the "inducement" component of induced infringement.

For example, in *Vita-Mix Corp. v. Basic Holding, Inc.*, the court concluded that the defendant's blender instructions provided no basis on which the plaintiff could rely to infer specific intent to encourage infringement. 581 F.3d 1317, 1328-29 (Fed. Cir. 2009). Specifically, the defendant's instructions taught the consumer to use the blender in a clearly non-infringing manner. *Id.* If continued sales of the alleged product alone were sufficient to constitute an affirmative act of inducement, the context of the blender instructions in *Vita-Mix* would have been irrelevant. At a minimum, *Vita-Mix* shows that, at least with a product capable of non-infringing uses, inducement requires a suggestion that the direct infringer *use* the product in an infringing way – and that merely selling the product is not sufficient.

Finally, courts in this district have repeatedly held that plaintiffs' allegations must extend beyond the merely formulaic "makes, uses, offers to sell, or sells" language provided in 35 U.S.C. § 271 to sufficiently plead induced infringement. *See, e.g., Core Wireless*, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015) ("[G]eneric allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient

---

[8] The Court should note that the claims of the asserted patents are directed, ***not*** to the product itself, but to ***one*** particular use or functionality of those products.

9

to create a reasonable inference of specific intent for the purposes of an induced infringement claim."); *cf. Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 936-937 (E.D. Tex. 2016) (finding inducement claim sufficiently stated where plaintiff "pleaded the specific products alleged to infringe; the functionality of the products that infringe; that [defendants] had knowledge of the patents before the filing of the initial complaint and at the time that the first complaint was filed; that the defendants arranged to remain willfully blind to [plaintiff's] patents by adopting a policy of not reviewing the patents of others; and that the defendants induced customers to infringe the patents by instructing them in advertising and promotion to use the accused products in an infringing way.").

Here, Plaintiff alleges that Check Point induces infringement by "providing" the accused instrumentalities to customers. Dkt. No. 1 ¶¶ 44, 56, 65. This is just a reformulation of "offers to sell or sells." Beyond that, Plaintiff alleges only (and only for one of the three indirect infringement claims) that Check Point "directs [its] customers to utilize the Accused Products in an infringing matter through marketing and support materials." *Id.* ¶ 64. Such a generic assertion could be made in any patent case; it does not contain enough factual content to support a plausible claim of inducement.[9] *See Twombly*, 550 U.S. at 545; *see also Core Wireless*, 2015 WL 4910427, at *4 (dismissing inducement claim where complaint contained no more than "generic allegations that an alleged infringer provides instructional materials along with the accused products"). What precisely did Check Point do to bring about infringement? What actions did it take? What statements did it make? The Complaint answers none of these questions. Plaintiff's generic allegations do not provide notice to Check Point of what acts are allegedly encouraging or inducing infringement. These allegations should be dismissed.

---

[9] As noted, this "direction" allegation appears only in Count V, but not in Count III or IV.

### c. Plaintiff Fails to Allege Specific Intent.

Plaintiff must also show that Check Point acted with the specific intent to achieve the desired result, *i.e.*, infringement. *Commil*, 135 S. Ct. at 1928; *accord Lifetime Indus.*, 869 F.3d at 1379 ("[A] complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent . . . ."). That is, even assuming that continuing to sell an allegedly infringing product constitutes an affirmative act of inducement (it does not), Plaintiff must still plead facts from which it could be inferred that Check Point continued those sales *with the specific intent to induce infringement*. *See Global-Tech*, 563 U.S. at 760; *see also Tierra*, 2014 WL 894805, at *4 ("Though the distinction between simply knowing the consequences of one's voluntary actions and intending them may be conceptually murky, the law clearly sets a purposefulness standard for induced infringement.").

Intent may be inferred from circumstantial evidence (*see, e.g., Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003)), but it is not plausible on the current record to infer that Check Point kept its product on the market with the specific intent to induce infringement. Instead, Check Point's continued sales are equally consistent with the inference that Check Point thought that its product was non-infringing, that the patents were invalid or that its product was being used in a non-infringing manner. Allowing Plaintiff's inducement claims to rest on the simple fact that Check Point has continued sales dismantles any distinction between intent and every other element of inducement. *See Tierra*, 2014 WL 894805, at *6 (The law requires evidence of specific intent, "not because there is a clear difference between knowing the consequences of one's behavior and intending them, but because such an evidentiary hurdle ensures the availability of useful products and protects neutral market participants who are indifferent to the possibility of infringement.").

Plaintiff has not alleged anything beyond the generic conduct of distributing the accused instrumentalities, without identifying any specific acts nor describing a connection between the conduct and the alleged direct infringement. Because Plaintiff fails to identify any specific acts of inducement, Check Point has no notice of what actions it is supposed to cease. Thus, Check Point acting the same as before does not suggest any specific intent to achieve the desired result of infringement. *Cf. Apeldyn Corp. v. Sony Corp.*, 852 F. Supp. 2d 568, 574 (D. Del. 2012) ("[I]f a complaint sufficiently identifies, for purposes of Rule 8, the patent at issue and the allegedly infringing conduct, a defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint satisfies the requirements of *Global-Tech*." (emphasis added)).

Plaintiff alleges only the bare conclusion that Check Point acted "with the intent to cause infringing acts by others" or was "willfully blind to the infringement"—without <u>any</u> supporting facts. Dkt. No. 1 ¶¶ 45, 57, 66. "Simply repeating the legal conclusion that Defendant[] induced infringement . . . does not plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The closest Plaintiff comes to a factual allegation that Check Point specifically intended customers to infringe is in Count V, where Plaintiff alleges that Check Point directs "customers to utilize the Accused Products in an infringing matter through marketing and support materials."[10] Dkt. No. 1 ¶ 64. This allegation, which cites to a "Check Point 600/700 Appliances

---

[10] What's more, the patent at issue in Count V, the '421 patent, expired on February 14, 2020, less than three months after the Complaint was filed and less than two weeks after Check Point was served. Because, as explained above, Plaintiff cannot allege pre-suit indirect infringement of this patent, the indirect infringement damages window is extremely short.

Administration Guide," does not support an inference of specific intent to induce infringement. *See Core Wireless*, 2015 WL 4910427, at *4 ("[G]eneric allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim."). Counts III and IV are even more threadbare, as they do not even include factual allegations that Check Point "directs" customers via "marketing and support materials." Dkt. No. 1 ¶¶ 44-45, 55-56.

Nowhere does Plaintiff allege, for example, that Check Point has instructed customers to use the products specifically in an infringing manner. *Cf. ReefEdge*, 29 F. Supp. 3d at 460 (upholding induced infringement claim where the plaintiff "cite[d] to marketing material directed at using the accused products in an allegedly infringing manner" and alleged the defendant "induces infringement through its technical support services by 'instructing its customers to use its products in an infringing way'"). Without such details, the Complaint shows simply that Check Point is engaged in the ordinary business of selling and supporting a lawful product, which would not be inducement even if Check Point had engaged in that conduct with knowledge of the allegation of infringement. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1276 n.6 (Fed. Cir. 2004) ("[S]ale of a lawful product by lawful means, with the knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute inducement of infringement." (citation omitted)); *see also Tierra*, 2014 WL 894805, at *5 ("By allowing a market participant to sell a product *knowing*, but not actually *intending*, that the product will be used to infringe allows society to reap important benefits.").

The conclusory allegations in the Complaint are insufficient to raise a plausible inference that Check Point has acted with specific intent to cause infringement, and the inducement claims should be dismissed.

### d. Plaintiff Fails to Allege Willful Blindness.

As a substitute for specific intent,[11] Plaintiff also attempts to invoke the doctrine of willful blindness. Dkt. No. 1 ¶¶ 45, 57, 66 (alleging Check Point was "willfully blind to the infringement" by others). But Plaintiff yet again does no more than repeat a legal conclusion without any supporting facts. Willful blindness has "two basic requirements: (1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769. The Complaint does not include any facts from which to plausibly conclude that Check Point subjectively believed there was a high probability of infringement. Nor does the Complaint identify any deliberate actions that Check Point took to avoid learning of infringement. All the Complaint does is allege, for each claim of indirect infringement, that Check Point "induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the ['790]['846]['421] Patent, but while remaining willfully blind to the infringement." Dkt. No. 1 ¶¶ 45, 57, 66. Such an allegation does no more than restate the legal conclusion that Check Point was allegedly willfully blind to infringement by customers. This is not enough. The Supreme Court has explicitly held that mere "deliberate indifference" to a risk is

---

[11] It is unclear from the face of the Complaint whether Plaintiff alleges that Check Point was willfully blind to the existence of Longhorn's patents. *See, e.g.*, Dkt. No. 1, ¶ 45. Regardless, because the Complaint fails to allege a factual basis for an allegation of willful blindness, such a theory could not substitute for allegations of actual knowledge.

14

insufficient; rather, there must be "active efforts by an inducer to avoid knowing about the infringing nature of the activities." *Global-Tech*, 563 U.S. at 770; *cf. Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 825 (E.D. Tex. 2019) (finding willful blindness adequately-pleaded where plaintiff alleged that "Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Motiva's patent rights."). Plaintiff does not come close to the required showing, and its allegations of willful blindness should be dismissed.[12]

## V.  CONCLUSION

In sum, Plaintiff's inducement claims contain essentially zero factual content. Plaintiff merely recites the legal elements of knowledge and specific intent (or willful blindness) and then recites nonspecific conduct of "providing" products "for use in an infringing manner." Plaintiff's indirect infringement allegations do not pass muster under Rule 8, Rule 11, *Twombly*, *Iqbal*, *Global-Tech*, or *Commil*, and should be dismissed.

---

[12] Relatedly, while the Complaint does not contain a prayer for damages for willful infringement or a clear indication that Plaintiff believes Check Point has willfully infringed the asserted patents, any such claim would fail for the same reasons. Thus, to the extent that the complaint purports to state a claim for willful infringement based on a theory of willful blindness, this claim too should be dismissed.

| | |
|---|---|
| Dated:  March 25, 2020 | Respectfully submitted,<br><br>*/s/ Alyssa Caridis*<br><br>CLEMENT ROBERTS (SBN 209203) – LEAD COUNSEL<br>croberts@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>405 Howard Street<br>San Francisco, CA 94105<br>Telephone:     (415) 773-5700<br>Facsimile:      (415) 773-5759<br><br>EVAN BREWER (SBN 304411)<br>ebrewer@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>1000 Marsh Road<br>Menlo Park, CA  94025-1015<br>Telephone:     (650) 614-7400<br>Facsimile:      (650) 614-7401<br><br>ALYSSA CARIDIS (SBN 260103)<br>acaridis@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>777 South Figueroa Street, Suite 3200<br>Los Angeles, CA 90017<br>Telephone:     (213) 629-2020<br>Facsimile:      (213) 612-2499<br><br>***ATTORNEYS FOR DEFENDANT CHECK POINT SOFTWARE TECHNOLOGIES, LTD.*** |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on March 25, 2020, all counsel of record are being served with a copy of this document by email.

            */s/ Alyssa Caridis*

            ALYSSA CARIDIS (SBN 260103)
            acaridis@orrick.com