THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LONGHORN HD LLC, | § § | |
| Plaintiff, | § § | C.A. No. 2:19-cv-00384-JRG |
| v. | § § | JURY TRIAL DEMANDED |
| CHECK POINT SOFTWARE TECHNOLOGIES, LTD., | § § § § | |
| Defendant. | | |

**CHECK POINT SOFTWARE TECHNOLOGIES, LTD.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

**I.     INTRODUCTION**

Plaintiff Longhorn HD LLC ("Plaintiff") fails to sufficiently plead any element of indirect infringement. In response to Check Point Software Technologies, Ltd.'s ("Check Point") motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), Plaintiff simply asserts that it need not "provide detailed factual support for every element of inducement." D.I. 9 ("Opp.") at 4. Check Point has never contended otherwise. But Plaintiff cannot meet the pleading standard by simply parroting the legal elements of indirect infringement—facts still matter. Indeed, "the *facts* pled must, when accepted as true, state a claim for relief that is 'plausible on its face,' i.e., the facts pled must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, No. 2:13-cv-38-JRG, 2014 WL 894805, at *2 (E.D. Tex. Mar. 4, 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). The Complaint does not meet this standard for any element. The Court should, therefore, dismiss Plaintiff's indirect infringement claims in Counts III-V of the Complaint.[1]

**II.    PLAINTIFF FAILS TO ALLEGE THE REQUISITE KNOWLEDGE**

    **1.  Plaintiff Fails to Allege Adequate Knowledge of The Asserted Patents**

Check Point cannot be liable for inducement before the Complaint was filed. As the court is aware, a claim for inducement must allege, *inter alia*, knowledge of the asserted patents. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011).

In its Opposition, Plaintiff concedes that it has not pleaded any basis upon which to conclude that Check Point had knowledge of the asserted patents prior to the filing of the

---

[1] Check Point does not dispute that, by this Motion, it does not challenge the sufficiency of Plaintiff's direct infringement pleadings in the Complaint.

Complaint (Opp. at 4, 5), yet maintains that its pre-suit allegations are proper. Opp. at 6. This is wrong. Plaintiff's conclusion is premised on its mistaken belief that this Court does not require pre-suit knowledge. Opp. at 5. Plaintiff misses the point. The court has only held that pre-suit knowledge is not required for claims alleging infringement from the time of the complaint *going forward*. *See, e.g., Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2016 WL 1643315, at *4 n.4 (E.D. Tex. Apr. 26, 2016). The court has been clear that pre-suit knowledge *is* required for allegations of inducement pre-dating the Complaint. *See, e.g., Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, No. 2:13-cv-44-JRG, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[Defendants] are of course correct that they cannot be liable for induced infringement for conduct occurring prior to its knowledge of the patents-in-suit."); *Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697, at *8 (E.D. Tex. Mar. 3, 2017), *report and recommendation adopted*, 2017 WL 2832613 (E.D. Tex. Mar. 27, 2017) ("[S]ince Plaintiff has failed to plausibly plead that the Mercedes and Volvo Defendants had pre-suit knowledge of the patent, it fails to state an indirect infringement claim for acts occurring before the suit was filed."). Because it is undisputed that the Complaint contains no allegations that Check Point had knowledge of the patents *prior to* the filing of the Complaint, Plaintiff's allegations of indirect infringement pre-dating the Complaint should be dismissed under Rule 12(b)(6). *See* Dkt. No. 1 ¶¶ 44, 45, 56, 57, 65, 66 (alleging that Check Point "knowingly and intentionally *induced*" and "*induced* infringement by others" in the past tense (emphases added)).

Regarding post-filing knowledge of the patents, Plaintiff's only responses are that (1) Check Point seeks a result contrary to the law in this District, a point which Check Point itself raised, and (2) willfulness is not inducement. Neither argument is persuasive. First, while

this Court has allowed allegations of inducement to proceed based on knowledge of the patents from the Complaint, it has also expressed skepticism of allowing a claim to proceed based purely on *future* action alleged in the Complaint that has not yet occurred. *See, e.g., Bush Seismic Techs. LLC v. Am. Gem Soc'y*, No. 2:14-cv-1809-JRG, 2016 WL 9115381, at *3 (E.D. Tex. Apr. 13, 2016) (Plaintiff does not have "a good faith basis to allege willful and induced infringement" when its allegations are exclusively "based on post-suit conduct that ha[s] not yet occurred."). Check Point urges the Court to follow this latter line of reasoning, consistent with Federal Circuit precedent, *see In re Seagate Tech., LCC*, 497 F.3d 1369, 1374 (Fed. Cir. 2007), and Federal Rule of Civil Procedure 11(b)(3), which requires evidentiary support for factual pleadings.

Second, Plaintiff broadly asserts that willfulness is different from inducement and dismisses both *VLSI* and *Bush* on this basis. But Plaintiff fails to explain why the pleading requirements for knowledge under a theory of willfulness are any different from the requirements under a theory of induced infringement. Indeed, there is no principled reason to treat the law differently. *See, e.g., Bush*, 2016 WL 9115381, at *2 ("Claims for willful and induced infringement necessarily require allegations that the accused infringer knew of the patent."). While there may be substantive differences between willfulness and indirect infringement in other respects, both require knowledge of the patent, knowledge of infringement, and action after acquiring knowledge. Moreover, there is no difference between the kind of knowledge necessary to support a claim for willfulness and the kind of knowledge necessary to support a claim for inducement that would justify permitting bootstrapping in one context while prohibiting it in the other.  *See* Dkt. No. 8 at 5-6.  Nor does Plaintiff provide such a justification.

Finally, Plaintiff insists that *Ultravision Technologies, LLC v. Govision, LLC*, No. 2:18-cv-00100-JRG-RSP, 2020 WL 896767 (E.D. Tex. Jan. 20, 2020), *report and recommendation*

3

*adopted*, 2020 WL 887754 (E.D. Tex. Feb. 24, 2020), is "the most analogous case," Opp. at 8, but the defendant there made none of the arguments Check Point raises here. Specifically, while the defendant in *Ultravision* argued that the plaintiff's inducement allegations were insufficiently pleaded, the defendant did not argue that knowledge based on the Complaint is insufficient, in violation of *Seagate* or Rule 11, or impractical. The Court's decision in *Ultravision*, therefore, has no bearing on Check Point's arguments here and is certainly not "the most analogous case."

### 2. Plaintiff Fails to Allege Knowledge of Infringement

A claim for inducement "requires proof the defendant knew the acts were infringing." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015). Here, Plaintiff all but concedes that it has not pleaded any facts showing that Check Point had knowledge of the alleged infringement, before or after the filing of the Complaint. Rather, Plaintiff urges that it is "reasonable and plausible" to infer such allegations upon "considering the Complaint[] 'as a whole.'" Opp. at 8. But, viewing the Complaint as a whole, all Plaintiff has asserted are legal conclusions with *no* supporting facts. Plaintiff's *only* allegation related to knowledge of infringement is that Check Point, "with knowledge that these products, or the use thereof, infringe the ['790, '846, and '421 Patents] at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the ['790, '846, and '421 Patents] by providing these products to end users for use in an infringing manner." Dkt. No. 1 ¶¶ 44, 56, 65. This is nothing more than regurgitating the standard for inducement. Even assuming Plaintiff sufficiently pleaded knowledge of the patents (it did not), this one sentence, the only sentence upon which each of Plaintiff's inducement counts rely that even mentions knowledge, with no factual basis, cannot plausibly support an allegation of knowledge of infringement. Nor has Plaintiff alleged that it provided

4

pre-suit notice for inducement allegations pre-dating the complaint. Accordingly, Plaintiff has failed to plead knowledge of infringement, and its inducement allegations cannot stand.

### III.    PLAINTIFF FAILS TO ALLEGE AFFIRMATIVE CONDUCT

To be liable for induced infringement, a party must "actively induce[] infringement," meaning "the inducement must involve the taking of affirmative steps to bring about the desired result." *Global-Tech*, 563 U.S. at 760. For Counts III and IV, the *only* affirmative conduct the Complaint identifies is that Check Point continued to do exactly what it was doing prior to the filing of the Complaint. Dkt. No. 1 ¶¶ 43, 55. And, for Count V alone, all the Complaint adds is that Check Point directs "customers to utilize the Accused Products in an infringing matter [sic] through marketing and support materials." *Id.* at ¶ 64. These skeletal, generic allegations are insufficient to support a claim of inducement. *See Tierra*, 2014 WL 894805, at *6 ("[F]ailure to change behavior in light of a new fact cannot be characterized as an affirmative step evincing desire on the part of [defendant] that users infringe [Plaintiff's] patents.").[2]

Plaintiff concedes that it is has not alleged any actions taken by Check Point to encourage infringement, and Plaintiff's only response to this argument is that it does not need to. *See* Opp. at 6-7 (quoting *Bill of Lading*, 681 F.3d at 1335). That is untenable. *See Global-Tech*, 563 U.S. at 760 (Inducement requires "the taking of affirmative steps to bring about the desired result."). Plaintiff's reliance on *Bill of Lading* is misplaced; the language on which Plaintiff relies (that a plaintiff need not "plead facts establishing that each element of an asserted claim is met") related strictly to pleading *direct* infringement under (now repealed) Form 18, not *indirect*

---

[2] Plaintiff inserts the words "actively encouraging" in its recitation of the Complaint (Opp. at 7) but these words do not appear in the Complaint. Even if they did, these allegations are bare legal conclusions with *no* facts supporting any level of plausibility.

infringement.[3] Even when Form 18 governed direct infringement, it did not abrogate application of *Twombly* and *Iqbal* with respect to indirect infringement. In fact, both the Federal Circuit in *Bill of Lading* and this Court have acknowledged that indirect infringement pleadings are governed by the *Twombly/Iqbal* standard. *Bill of Lading*, 681 F.3d at 1336 ("Form 18 should be strictly construed as measuring only the sufficiency of allegations of direct infringement, and not indirect infringement."); *Motion Games, LLC v. Nintendo Co.*, No. 6:12-cv-00878-RWS-JDL, 2014 WL 11619163, at *6 (E.D. Tex. Mar. 7, 2014) ("Form 18 does not expressly pertain to indirect infringement."). Under the proper standard, a court should dismiss a claim under Rule 12(b)(6) if it does not contain enough alleged facts to state a plausible claim for relief. *Twombly*, 550 U.S. at 570. The Complaint here falls far short of this standard.

Merely continuing business as usual is insufficient to constitute an affirmative act to encourage direct infringement. *See Tierra*, 2014 WL 894805, at *6. This is especially true where, like here, the products are capable of substantial non-infringing uses, a fact Plaintiff does not dispute. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1276 n.6 (Fed. Cir. 2004) ("[The] sale of a lawful product by lawful means, with the knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute inducement of infringement."). Furthermore, Check Point was not capable of "continuing" any action (selling products or otherwise) at the time the Complaint was filed when it only learned, at that moment, that it was allegedly inducing infringement.

---

[3] Moreover, in context, it is clear that when the Federal Circuit stated that a plaintiff is not required to "plead facts establishing that each element of an asserted claim is met," it was referring to a claim *of a patent*, not a legal claim. *See Bill of Lading*, 681 F.3d at 1335 (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) ("[A] plaintiff in a patent infringement suit is not required to specifically induce each element of the claims of the asserted patent.")).

6

Regarding Count V, broadly citing "marketing and support materials" and inserting a link to a Check Point product guide does not allege with any plausibility how Check Point's marketing materials tend to induce direct infringement. *See Core Wireless S.A.R.L. v. Apple Inc.*, No. 6:14-cv-00752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015) (Citing instructions without "alleg[ing] any facts identifying, even at a basic level, … how the instructions direct customers to use those products in an infringing manner, falls short of satisfying Rule 8's notice requirement."); *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328-29 (Fed. Cir. 2009) (finding context of marketing materials dispositive); *Tierra*, 2014 WL 894085, at *3 ("[V]ague assertions that the [product guide] instructs infringement are not sufficient by themselves; the Court must be willing to examine the plausibility of the Complaint in light of the relevant documents themselves.").

Finally, Plaintiff's criticism of *Core Wireless*, Opp. at 8, is irrelevant. While the *direct* infringement allegations there were evaluated under the prior Form 18 standard, the *indirect* infringement allegations were properly considered under *Twombly* and *Iqbal*. *See Core Wireless*, 2015 WL 4910427, at *3 ("Form 18, however, applies only to direct infringement claims and thus cannot measure the sufficiency of indirect infringement pleadings. Therefore, claims for indirect infringement must be judged by the standards articulated in *Twombly* and *Iqbal*.") (internal citations omitted). Under this proper standard, Plaintiff's generic allegations do not provide notice to Check Point of what acts are allegedly encouraging or inducing infringement.

## IV. PLAINTIFF FAILS TO ALLEGE SPECIFIC INTENT

Even assuming Plaintiff properly pleaded knowledge of the patents and infringement as well as an affirmative act (it has not), Plaintiff has completely failed to allege any facts from which it could be inferred that Check Point acted with the specific intent to induce infringement.

7

*See Global-Tech*, 563 U.S. at 760; *see also Tierra*, 2014 WL 894805, at *4 ("Though the distinction between simply knowing the consequences of one's voluntary actions and intending them may be conceptually murky, the law clearly sets a purposefulness standard for induced infringement."). In fact, Plaintiff completely ignores Check Point's arguments regarding the element of intent and, instead, broadly asserts that "it is 'reasonable and plausible' to infer that Check Point specifically intended to induce its customers to infringe the Asserted Patents and knew the customers' acts constituted infringement." Opp. at 8.

While intent can be inferred from circumstantial evidence, Plaintiff has failed to even attempt to adduce that. All that is alleged in the Complaint is that Check Point acted "with the intent to cause infringing acts by others"—without *any* supporting facts. Dkt. No. 1 ¶¶ 45, 57, 66. That is, Plaintiff states a legal conclusion and then fails to allege any facts from which such a conclusion could be inferred, even circumstantially. This cannot plausibly support an inducement claim. *See Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F.App'x 934, 938 (Fed. Cir. 2015) ("Simply repeating the legal conclusion that Defendant[] induced infringement . . . does not plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

As noted above, the only purported affirmative act pleaded in the Complaint is that Check Point continued selling its products. Even assuming this was enough to constitute an affirmative act, Plaintiff still must plead facts from which it could be inferred that Check Point continued those sales with the specific intent to induce infringement. *See Global-Tech*, 563 U.S. at 760. Continued sales alone do not meet that standard, and allowing them to vitiates any distinction between intent and every other element of inducement. Check Point's continued sales

8

are equally consistent with the inference that Check Point believed that its products are being used in a non-infringing manner or that its products are non-infringing. Plaintiff does not allege *any* facts that allow the Court to draw the inference that Check Point instead intended to induce infringement. *See Bill of Lading*, 681 F.3d at 1340 ("In assessing whether it is reasonable to infer intent from statements or conduct, moreover, the Supreme Court recently made clear that a court must assess the facts in the context in which they occurred and from the standpoint of the speakers and listeners within that context."). And, while the Complaint mentions "marketing and support materials" in Count V, generically pointing to such materials, "without more, [is] insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim." *Core Wireless*, 2015 WL 4910427, at *4. Where such materials "teach[] an undisputedly non-infringing use," moreover, "no inference of intent to induce infringement may be drawn." *Tierra*, 2014 WL 894805, at *3 (internal quotation marks omitted).

Finally, Plaintiff's misleading "summary" of the Complaint, Opp. at 7, is unhelpful. For example, Plaintiff states:

> "regarding Count III and the '790 Patent, LHD alleges that Check Point infringes by, among other things, encouraging the use of its Check Point Remote Access Clients, such as those listed on its website. The Check Point website identified in the Complaint (Dkt. 1 at n.6) includes a download link for Check Point's customers to download and utilize the Remote Access Client. LHD's Complaint further explains how the use of the Remote Access Client by Check Point's customers (as encouraged by Check Point's website and technical support materials) infringes at least Claim 1 of the '790 Patent."

This recounting contains significantly more detail than the Complaint itself alleges. Nowhere in Count III does the Complaint reference "download links" or "technical support materials." Nonetheless, even if the Complaint contained these additional statements, Plaintiff still fails to allege *how* Check Point encourages use of its products in an infringing manner or which *facts*

9

support an inference that Check Point took any action with the intent to induce infringement. Plaintiff's conclusory allegations are insufficient to support an inducement claim.

## V. PLAINTIFF FAILS TO ALLEGE WILLFUL BLINDNESS

Plaintiff does not substantively respond to Check Point's arguments that the Complaint lacks an adequate pleading based on willful blindness. Plaintiff's only response is that "Counts III-V of the Complaint include allegations of conduct prior to the filing of the Complaint, including the acts of underlying direct infringement as well as allegations related to willful blindness." Opp. at 6. Plaintiff properly provides no citation for this sentence because no such allegations exist. The *only* mention of willful blindness in the Complaint is the bare legal conclusion that "Defendant induced infringement . . . with the belief that there was a high probability that others, including end users, infringe the ['790]['846]['421] patent, but while remaining willfully blind to the infringement." Dkt. No. 1 ¶¶ 45, 57, 66. This is simply a legal conclusion. The Complaint does not plead *one* fact from which the Court could plausibly infer that Check Point subjectively believed there was a high probability of infringement or that Check Point took any deliberate actions to avoid learning of infringement. For the reasons stated in Check Point's motion, and because this is undisputed, the court should dismiss any allegations based on willful blindness.

10

## VI. CONCLUSION

For the foregoing reasons and as set forth in Check Point's opening brief, the Complaint's indirect infringement allegations in Counts III-V should be dismissed.

Dated: April 15, 2020

Respectfully submitted,

*/s/ Alyssa Caridis*

CLEMENT ROBERTS (SBN: 209203) – LEAD COUNSEL
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-5700
Facsimile: (415) 773-5759

EVAN BREWER (SBN: 304411)
ebrewer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

ALYSSA CARIDIS (SBN: 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile: (213) 612-2499

**ATTORNEYS FOR DEFENDANT CHECK POINT SOFTWARE TECHNOLOGIES, LTD.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 15, 2020, all counsel of record are being served with a copy of this document by email.

*/s/ Alyssa Caridis*

ALYSSA CARIDIS (SBN: 260103)
acaridis@orrick.com