**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LONGHORN HD LLC., | § | |
| | § | |
| | § | Case No. 2:19-cv-00384-JRG |
| Plaintiff, | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| CHECK POINT SOFTWARE | § | |
| TECHNOLOGIES, LTD., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**LONGHORN HD LLC'S SUR-REPLY IN FURTHER OPPOSITION**
**TO DEFENDANT CHECK POINT SOFTWARE TECHNOLOGIES LTD.'S**
**<u>MOTION TO DISMISS (DKT. 8)</u>**

Plaintiff Longhorn HD LLC. ("LHD" or "Plaintiff") respectfully submits this Sur-Reply In Further Opposition to Defendant Check Point Software Technologies, Ltd.'s ("Check Point" or "Defendant") Motion to Dismiss (Dkt. 8).

## I.   INTRODUCTION

Check Point again asks the Court to overturn long-standing precedent in this District to find that the filing of a complaint cannot constitute knowledge for purpose of infringement.  This Court has previously held that "there is no pre-suit knowledge requirement to establish induced infringement" and that such a requirement would lead to "absurd results."  *See Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-CV-325-JRG, 2016 WL 9275395, at *2 (E.D. Tex. Oct. 19, 2016); *Tierra Intelectual Borinquen, Inc. v. ASUS Comp. Int'l, Inc.*, No. 2:13-cv-44, 2014 WL 1233040, at *2 (E.D. Tex. March 24, 2014) ("If pre-suit knowledge were required, companies would have carte blanche to induce infringement purposefully provided that they were unaware of the patent prior to suit.").  Regardless, LHD has alleged that Check Point has had knowledge of the patents prior to the filing of the lawsuits, a contention that Check Point does not deny, rendering this issue moot.  In the face of contrary legal precedent, Check Point's Reply does not provide any reasoning that could mitigate these absurd results.  Instead, Check Point chooses to obfuscate the law by mixing and matching cases that were analyzed under a different pleading standard than the one set forth for inducement.

Check Point admits that LHD has sufficiently pled direct infringement, but fails to acknowledge the LHD's pleadings regarding affirmative conduct and the specific intent to infringe regarding inducement.  Dkt. 10 at n.1.  LHD has clearly stated that Check Point sells to customer's in the United States, constituting an act of direct infringement.  LHD has clearly stated that Check Point induces its customers to infringe through its affirmative conduct and intent, as evidenced by at least their website, which contains technical information regarding the

operation of the accused devices, and further links to operation manuals.  These allegations were made in LHD's complaint, and were corroborated by links to Checkpoint's website for each Count in the complaint.  As set forth in LHD's responsive brief and below, LHD has alleged sufficient facts to support claims of inducement under this Court's precedent  *See, e.g.*, *Ultravision Technologies, LLC v. GoVision, LLC*, No. 2:18-cv-00100-JRG-RSP, 2020 WL 896767 (E.D. Tex. Jan. 20, 2020), report and recommendation adopted, 2020 WL 887754 (E.D. Tex. Feb. 24, 2020).

Additionally, Check Point makes passing reference to Rule 11—a serious allegation that is without merit.  As set forth in its Responsive brief, LHD's Complaint was filed in compliance with Rule 11(b).  However, Check Point itself may have violated Rule 11(c) as it has not complied with the safe harbor provisions therein.  If Check Point is indeed invoking Rule 11 in its motion to dismiss, it had the obligation to follow the protocol set forth therein.  At no point prior to filing its motion did Check Point indicate to LHD that it believed there were any defects with LHD's complaint.  Furthermore, at no point prior to filing its motion did Check Point offer LHD the opportunity to amend or correct any pleading.

For the foregoing reasons, Check Point's Motion should be denied.

## II.    LHD HAS PLEADED REQUISITE KNOWLEDGE AND WILLFUL BLINDNESS

Regarding post-filing knowledge, Check Point does not appear to dispute that it has post-filing knowledge of the patents, but merely restates that the law in this District should be overturned.  As stated above and in LHD's Response, Check Point's interpretation of the law would result in absurd results and should be rejected.

Regarding pre-suit knowledge, Check Point is incorrect that LHD has not pleaded such knowledge.  The Complaint alleges that Check Point has knowledge and has induced infringement.  The Complaint does not cabin Check Point's knowledge to post-filing knowledge.

Additionally, LHD has pleaded willful blindness.  To the extent that the Court were to determine that these contentions regarding pre-suit knowledge would require additional facts to be recited in the Complaint, LHD respectfully requests leave to amend to add additional facts. Such facts include, for example, that LHD sued Check Point's competitor, Fortinet Inc., for infringing the same patents by providing competing technologies nearly a year prior to filing the Complaint.[1]  Check Point likely received information from industry publications that track patent litigations in this market, such as information from Docket Navigator or Law360.[2] Accordingly, Check Point either had actual knowledge of the Patents or was willfully blind to their existence.

## III.    LHD HAS ALLEGED AFFIRMATIVE CONDUCT AND SPECIFIC INTENT

Check Point incorrectly characterizes both the facts and the law with regard to the affirmative conduct and specific intent prongs of indirect infringement.  First, Check Point is incorrect that LHD has conceded Check Point's encouragement of infringement—LHD does not make any such concession.  As set forth in its Response, LHD has alleged facts related to user manuals and technical documentation on Check Point's website that evidence Check Point's encouragement of its customers' infringement.  Check Point further misrepresents the pleadings by stating "[n]owhere in Count III does the Complaint reference 'download links' or 'technical support materials.'"  Dkt. 10 at 9.  The Complaint does not merely refer to download links, but includes the actual download link to Check Point's "supportcenter" in footnote 6 to paragraph 40:

---

[1] *See, e.g.,* Longhorn HD LLC v. Fortinet, Inc. 2:19-cv-00124 (E.D.TX.) at Dkt. 1, filed on April 19, 2019.; *See e.g.,* Check Point's website available at https://supportcenter.checkpoint.com/supportcenter/portal?eventSubmit_doGoviewsolutiondetails=&solutionid=sk115416 referring to Fortinet as a competitor.

[2] *See, e.g.,* https://www.law360.com/cases/5cb63b20d34bc21dbd12a020

https://**supportcenter.checkpoint.com**/supportcenter/portal?eventSubmit_doGoviewsolu
tiondetails=&solutionid=sk101313

Dkt. 1 at n. 6 (emphasis added).  This link leads to a Check Point webpage titled

"Endpoint Security Client & Remote Access VPN Clients E80.51" which is discussed in

paragraph 40 of Count III.  Check Point does not dispute that it makes these support center pages

available to its customers or that it does not encourage use of the information and software

provided therein.

Second, Check Point is incorrect regarding the law.  Check Point states that it "was not

capable of 'continuing' any action (selling products or otherwise) at the time the Complaint was

filed when it only learned, at that moment, that it was allegedly inducing infringement."  Dkt. 10

at 6.  However, this argument has no basis in the case law because there is no prohibition against

satisfying the affirmative conduct aspect of indirect infringement with continuing conduct.

Check Point cites only to *Tierra*—a case involving OfficeMax, a classic neutral reseller.  *Tierra*

*Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, No. 2:13-CV-38-JRG, 2014 WL

894805, at *6 (E.D. Tex. Mar. 4, 2014).  However, the holding of this case is specific to classic

neutral sellers.  *Id.*   Check Point is not a classic neutral reseller.  As depicted in the footnotes to

the Complaint, Check Point sells products and provides technical support and instructions to its

users regarding how to use those products.  Check Point continues to instruct its customers to use

Check Point products in an infringing matter and thus has continued to induce infringement.

 Finally, the remainder of Check Point's case law citations is inapposite.  For example,

Check Point cites again to *Core Wireless* and characterizes Plaintiff's criticism of the case as

"irrelevant" because "[w]hile the direct infringement allegations there were evaluated under the

prior Form 18 standard, the indirect infringement allegations were properly considered under

*Twombly* and *Iqbal*."  Dkt. 10 at 7.  However, this was exactly LHD's point.  The indirect

infringement allegations in *Core Wireless* were dependent on direct infringement allegations

plead under Form 18 and failed as a result.  *See*, *Core Wireless Licensing S.A.R.L. v. Apple Inc.*,

No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015) (finding that

the plaintiff failed, among other things, "to allege any facts identifying, even at a basic level,

which functionalities of the accused products are at issue").  Here, the underlying acts of direct

infringement were plead by LHD and Check Point concedes that they are sufficient under

*Twombly* and *Iqbal*.  Accordingly, when read in view of the complaint as a whole, LHD's

indirect infringement allegations meet the pleading standard and should not be dismissed.

## IV.    CONCLUSON

For the foregoing reasons, LHD respectfully requests that the Court deny Check Point's

motion to dismiss, or in the alternative that the Court grant leave for LHD to submit an amended

complaint.

Dated:  April 23, 2020                                    Respectfully submitted,

                                                          */s/ Vincent J. Rubino, III*
                                                          Alfred R. Fabricant
                                                          NY Bar No. 2219392
                                                          Email: afabricant@brownrudnick.com
                                                          Peter Lambrianakos
                                                          NY Bar No. 2894392
                                                          Email: plambriankos@brownrudnick.com
                                                          Vincent J. Rubino, III
                                                          NY Bar No. 4557435
                                                          Email: vrubino@brownrudnick.com
                                                          John A. Rubino
                                                          NY Bar No. 5020797
                                                          Email: jrubino@brownrudnick.com
                                                          **BROWN RUDNICK LLP**
                                                          7 Times Square
                                                          New York, NY 10036
                                                          Telephone:  (212) 209-4800
                                                          Facsimile:  (212) 209-4801

Justin Kurt Truelove
Texas Bar No. 24013653
Email: kurt@truelovelawfirm.com
**TRUELOVELAWFIRM, PLLC**
100 West Houston
Marshall, Texas 75670
Telephone:  (903) 938-8321
Facsimile:  (903) 215-8510

***ATTORNEYS FOR PLAINTIFF
LONGHORN HD LLC***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on April 23, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

 */s/ Vincent J. Rubino, III*
Vincent J. Rubino, III